**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NADIA MUSA-MUAREMI | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 1824 |
| | ) | |
| | ) | |
| v. | ) | Judge Joan Humphrey Lefkow |
| FLORISTS' TRANSWORLD | ) | |
| DELIVERY, INC. | ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

Plaintiff Nadia Musa-Muaremi brings this Title VII case alleging a hostile work environment, gender discrimination and workplace harassment that culminated in her constructive discharge. (First Am. Compl. ¶¶ 1, 16, 17, 46.) [Dkt 29.] Defendant Florists' Transworld Delivery, Inc. ("FTD") denies Musa-Muaremi's claims and asserts a number of affirmative defenses. (First Am. Ans.) [Dkt 30.] Discovery closed in this matter on April 1, 2010. (Feb. 25, 2010 Order.) [Dkt 80]. Before the close of discovery, however, Musa-Muaremi moved to compel production of four documents that FTD had withheld on the claim of attorney-client privilege and work product protection. (Pl.'s Mot. to Compel.) [Dkt 65.] The parties submitted briefs on the issue and an oral argument was held. [Dkt 79.] After an *in camera* review of the documents and consideration of the parties' arguments and authorities, Musa-Muaremi's motion is granted.

1

## BACKGROUND

Musa-Muaremi, a former FTD employee, alleges that she was sexually harassed and/or suffered gender discrimination by her supervisor, Andrew Fordyce. (First Am. Compl. ¶¶ 11, 16, 17, 21-23, 29, 44.) She alleges that she complained of Mr. Fordyce's behavior to supervisors and human resources personnel to no avail. (*Id*. ¶¶ 20-23, 33-35, 40-42.) On May 1, 2007, Musa-Muaremi submitted to the human resources department a six-page complaint detailing her concerns. (*Id*. ¶ 43; Pl.'s Mot. to Compel, Ex. 7.) Shortly thereafter FTD conducted an investigation of her claims. Apparently both FTD's in-house and outside counsel played a role in that investigation, a fact that has given rise to the present motion.

Prior to the filing of the motion to compel, the parties conferred in efforts to resolve their discovery dispute. (*See, e.g.,* Pl.'s Mot. to Compel, Ex. 3-4.) Although FTD had not initially prepared a privilege log, it prepared one after being ordered to do so.[1] (*See* Sept. 25, 2009 Order.) [Dkt 50.] FTD twice revised that log after Musa-Muaremi's counsel complained that the log lacked sufficient information to assess the claimed protections. In the course of its opposition to the motion to compel, FTD further revised certain of its statements and disclosed still further information about the withheld documents – information that should have been disclosed initially. For example, FTD's privilege log failed to include any mention whatsoever of the role of its in-house counsel, Jon Burney. (*See* Second Supp. Log.) Not only did Mr. Burney play a role in two of the disputed documents, he was the author of one of them, which FTD misleadingly identified only as a "draft of the investigation summary of Angie Weld [a human resources employee] to the file of Plaintiff."

---

[1]FTD's Second Supplemental Privilege Log is attached both to Musa-Muaremi's motion [dkt 65-2] and FTD's response [dkt 68-4] and cited as "Second Supp. Log."

(Second Supp. Log ¶ 5.) The *in camera* review of the withheld documents disclosed other problems with FTD's descriptions, as discussed further below.

Each of the four disputed documents is a memorandum that shows redline edits of earlier drafts.[2]

PR 4-5: This is a two-page memorandum to the "personnel file of Nadia Musa" from Amy Majka, regarding "investigation summary meeting." It has two parts: the first purportedly reflecting a meeting on May 17, 2007, and the second part purportedly reflecting a May 21, 2007 meeting.

FTD's log describes this as a single document containing a draft prepared by Amy Majka, FTD's Human Resources Director, at the direction of outside counsel Renee Koehler on or about June 1, 2007, and edited by Koehler on or about June 4, 2007.[3] (Second Supp. Log ¶ 3.) In its briefing and oral argument, however, FTD revised its description to say that the document was drafted by Majka to FTD's in-house counsel Jon Burney at the direction of Burney and Koehler, and that the final version of the document was placed in Musa-Muaremi's personnel file and already produced to her. (Def.'s Resp. at 5.) The withheld draft reflects Koehler's redline edits, which according to FTD, convey Koehler's legal advice, mental impressions and opinions. (*Id.*)

The *in camera* review of PR 4-5 show that the edits include adding entire sentences, for example: "Nadia stated that she did not want to work at FTD anymore." (PR 4.) All of the changes are editorial, for example, deleting the "Attention: Jon Burney" or adding text. There is no discussion of legal issues.

PR 8: This is a one-page, one-paragraph memorandum entitled "Investigation Notes to the

---

[2] For simplicity, the bates numbers are shortened by deleting prefacing "0"s.

[3] Renee Koehler is one of the attorneys of record for FTD in this case.

3

file Nadia Musa," purportedly by Angeline Weld. FTD's log describes this document as a "draft of the investigation summary of Angie Weld to the file of Plaintiff" that was never finalized or placed in Musa-Muaremi's personnel file and not shared with anyone other than Weld and FTD's "current counsel." (Second Supp. Log ¶ 5.) In its briefing, however, FTD revised its description to assert that the document was "initially created" by Burney on or about June 6, 2007, and reviewed with Koehler and stored on her firm's computer system. (Def.'s Resp. at 5.) In oral argument, counsel for FTD reported yet a third version of the document's history: that the document was created by Weld at Burney's direction, and rewritten by Burney, although it was never finalized or placed in Musa-Muaremi's personnel file.

The "edits" to PR 8, in fact, delete the original draft in its entirety and replace it with a different text. All of the text is purportedly a summary of past events. There is no discussion of legal issues.

PR 9-10: This is a one-paragraph memorandum, purportedly by Majka, to "Personnel File of Nadia Musa," and dated May 17, 2007. It is another, more detailed, report of the May 17, 2007 meeting that is also described in PR 4-5. FTD's log describes this document as a "draft of the memorandum to [Musa-Muaremi's] personnel file summarizing the meeting with [her] regarding the results of the investigation of her complaint dated May 17, 2007." (Second Supp. Log ¶ 6.) FTD did not identify the document's author, but stated that the "draft form of the document" was not reviewed by anyone other than Majka and "FTD's current counsel." (*Id.*) In its briefing, FTD revised its description to state that the document is a draft memorandum that was provided to FTD's counsel as information on which FTD's attorneys could provide legal advice. (Def.'s Resp. at 6.) FTD does not identify the author of the original document. It claims that "FTD's counsel's legal

advice takes the form of redlined edits and revisions and suggestions for change to the document." (*Id*.)

There is no discussion of legal issues contained in PR 9-10, merely editorial changes to the content of the factual summary.

PR 11: This is a one-page three-paragraph memorandum, purportedly from Majka to the "The Personnel file – Nadia Mura [sic]." It is another report of the May 21, 2007 meeting described in PR 4-5. FTD's log describes this document as a draft memorandum to Musa-Muaremi's personnel file summarizing her meeting with Majka when Musa-Muaremi resigned. (Second Supp. Log ¶ 7.) FTD did not identify the document's author, but stated that the "draft form of the document" was not reviewed by anyone other than Majka and "FTD's current counsel." (*Id*.) In its briefing, FTD added that the final copy of this document was placed in Musa-Muaremi's personnel file and produced in the litigation. (Def.'s Resp. at 6.) FTD argues that the withheld draft reflects redline edits performed by Koehler which FTD asserts are protected on the basis of the attorney-client privilege and work product protection. (*Id*.)

The provenance of PR 11 is suspect. Notably, it misspells Musa-Muaremi's name. Also, one of the redline edits corrects the name of the purported author: "Amy Mayka" is corrected to "Amy Majka." All of the redline edits are editorial changes to the text of the document, for example, deleting "therefore is" and replacing it with "therefore was." There is no discussion of legal issues.

As to all four documents, there is a serious argument that FTD's defective privilege log waived any assertion of protection. *See Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.,* 152 F.R.D. 132,138-39 (N.D. Ill. 1993). It is not necessary to reach that issue, however, because the documents

are not protected for the reasons set out below.

## ANALYSIS

Musa-Muaremi argues that the four documents should be produced because they are FTD's investigation documents, not documents conveying privileged information or prepared in anticipation of litigation. (Pl.'s Mot. to Compel at 9-10.) She also argues that FTD has waived any applicable attorney-client privilege or work product protection by its assertion of an affirmative defense relying on the reasonableness of its investigation and response. (Pl.'s Mot. at 7-8.) FTD responds that its withheld documents were prepared by counsel or at the request of counsel in anticipation of litigation, and that since it is not relying on any of the challenged documents in order to assert its affirmative defenses, no privilege or protection has been waived. (Def.'s Resp. at 4-9.)

### A. Attorney-client privilege

Because Musa-Muaremi's Title VII action is based on federal law, federal law governs the assertion of the attorney-client privilege and the issue of whether that privilege has been waived. Fed. R. Evid. 501. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. at 389. The party asserting the privilege bears the burden of establishing all of its essential elements. *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

The attorney-client privilege protects "confidential communications made by a client to his

lawyer where legal advice of any kind is sought from a professional legal advisor in his capacity as such." *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal quotations omitted). It also protects "statements made by the lawyer to the client . . . in circumstances where those communications rest on confidential information obtained from the client or where those communications would reveal the substance of a confidential communication by the client." *Id*. The attorney-client privilege protects communications made in the course of an attorney's factual investigation when that investigation is made in order to provide legal advice. *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 619-620 (7th Cir. 2010).

The privilege does not, however, protect business decision advice, even when that business advice is rendered by an attorney or an attorney is one of those participating in the business decision. "Parties may not create a privilege in otherwise nonprivileged business documents by 'funneling' or incidentally copying them to an attorney." *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 1995 WL 663684 at *2 (N.D. Ill. Nov. 6, 1995) (citing, *inter alia*, *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 324 (7th Cir. 1963)).

The first issue here, then, is whether the disputed documents reflect the communication of legal advice by FTD's counsel or communications to FTD's counsel acting as a legal advisor for the purpose of obtaining legal advice. *See Rehling*, 207 F.3d at 1019. FTD has not demonstrated that they do. FTD equates the documents at issue here to drafts of a contract, which, when prepared by counsel or containing comments by counsel that communicate legal advice, can be protected by attorney-client privilege. *See, e.g., McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000). But the premise for protection must be that legal advice is communicated. Here, there is no legal advice or request for legal advice apparent in any of the documents. The contribution by

7

FTD's counsel is strictly editorial – word-smithing what purports to be the description by human resources personnel of meetings with Musa-Muaremi in memos that were to go into Musa-Muaremi's file. *Compare Rehling*, 207 F.3d at 1019 (defendant's in-house counsel communications were privileged because they advised the employer on how to accommodate the plaintiff employee); *Sandra T.E.*, 600 F.3d at 620 (law firm was retained to advise the client in confidence on how to respond to claims against it). FTD has not demonstrated that the attorney-client privilege shields the four documents from discovery.

B.  Work product protection

FTD also argues that its withheld documents are protected from discovery by the work product doctrine. The work product doctrine, established in *Hickman v. Taylor*, 329 U.S. 495 (1947), is now codified in the Fed. R. Civ. P. 26(b)(3): "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." It "is axiomatic that in order to invoke the protection of the work product privilege, one must show that the materials sought to be protected were prepared 'in anticipation of litigation.'" *Binks Manuf. Co. v. Natl. Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). The threshold determination in any case, then, is whether the materials claimed to be protected from discovery were indeed prepared in anticipation of litigation. *Id.*

It is well settled that "[t]he work product rule does not come into play merely because there is a remote prospect of future litigation." *Id.* (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977)). The mere fact that litigation eventually ensues does not, by itself, cloak materials with the protection of the work product privilege. *Id.* Likewise, the fact that an employer

8

anticipates the possibility of litigation from an event or accident does not automatically qualify an in-house report for protection from discovery. *Id.* at 1119 (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982)). "A more or less routine investigation of a possibly resistable claim is not sufficient to immunize an investigative report developed in the ordinary course of business." *Id.* (quoting *Soeder v. General Dynamics Corp.*, 90 F.R.D. 253 (D. Nev. 1980)).

In this instance, FTD has not sustained its burden of demonstrating that the documents at issue were created in anticipation of litigation. The withheld documents were created near the time of Musa-Muaremi's internal submission of her grievance, which was many months before her filing of a charge of discrimination with the EEOC. FTD has pointed to no evidence in the record to suggest that litigation was anticipated at the time of the withheld documents' creation. Rather, the record demonstrates that the documents were created as part of FTD's routine response to an employee's complaint. FTD's Human Resources Director Amy Majka (now Reicher) testified that her routine response to an employee complaint of harassment was to consult with inside and outside counsel. (Pl.'s Reply, Ex. 1, Dep. of A. Reicher at 32-40.) [Dkt 72.] She said that she followed that pattern in investigating Musa-Muaremi's claim. (*Id*. at 43, 48-49, 55, 58). FTD has not established that its withheld documents were prepared because of the prospect of ligation.

### C. *Faragher/Ellerth* defense

Additionally, Musa-Muaremi argues that FTD has waived any protection for the documents by asserting what is commonly referred to as the *Faragher/Ellerth* affirmative defense. Specifically, FTD alleges that it "at all times, exercised reasonable care to prevent and correct promptly any alleged sexually harassing behavior, and Plaintiff unreasonably failed to take advantage of available

9

preventive or corrective measures and opportunities provided by Defendant, or to otherwise avoid harm." (First Am. Ans. at 11.)

Under the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), an employer faced with a hostile environment case may, under certain circumstances, assert an affirmative defense to avoid vicarious liability. The affirmative defense has two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

Even assuming, *arguendo,* that the documents are attorney-client privileged or protected work product, any such protection for these particular documents was waived by FTD's assertion of its *Faragher/Ellerth* defense. The attorney-client "privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995) (citing with approval *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3rd Cir. 1994)); *accord Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) (the same under Indiana law). This rule "reflects an effort to strike a balance between the principle that waivers of the attorney-client privilege are to be narrowly construed . . . and the principle that a party should not be able to selectively disclose privileged information that it believes works to that party's advantage, while concealing the rest." *Remus v. Sheahan*, No. 05 C 1495, 2006 WL 1460006 at * 3 (N.D. Ill. May 23, 2006) (finding waiver of attorney-client privilege).

Several courts confronting the issue have found that asserting the *Faragher/Ellerth* defenses waives any attorney-client privilege that might apply to a defendant's investigation documents or communications. *See, e.g., E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611 (D. Colo. 2008) (ruling that to the extent defendants pled *Faragher/Ellerth* affirmative defense, they waived any applicable attorney-client privilege and work product doctrine regarding investigations into employees' complaints); *Jones v. Rabonco, Ltd.*, No. C03-3195P, 2006 WL 2401270 at * 4 (W.D. Wash. Aug. 18, 2006) (holding that defendants' assertion of *Faragher/Ellerth* defense waived any applicable attorney-client privilege and "cause[d] any investigation and remedial efforts into the discrimination alleged in this case, in which Defendants engaged and in which their attorneys were involved, to become discoverable, despite any attorney-client privilege that may have normally attached to such communications"); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) (holding that defendants waived any attorney-client privilege and work product protection for investigatory report prepared by attorney by asserting as a defense the adequacy of their pre-litigation investigation of plaintiff's discrimination claims, but also noting that intra-litigation analysis of investigation remained protected); *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245-246 (E.D.N.Y. 2001) (finding subject matter waiver of attorney-client privilege because among other reasons plaintiff would be prejudiced if plaintiff "could not assess the full measure of [the employer's] response in light of what it learned from its investigation," and danger of misleading court for same reason); *Brownell v. Roadway Package System, Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999) (finding waiver of attorney-client privilege as to attorney's investigatory documents by employer's assertion of adequacy of investigation as affirmative defense).

Even before the *Faragher* and *Ellerth* decisions, a court in this district held, "[I]f the

investigation or its results is to be used as evidence at trial, then clearly the privilege which it enjoys would be waived. One cannot assert the attorney/client privilege to keep an opponent from discovering facts about an investigation when the investigation is to be used at trial as a defense to defeat the opponent's allegations." *Fultz v. Federal Sign*, No. 94 C 1931, 1995 WL 76874 at * 2 (N.D. Ill. 1995).[4] Likewise, in *Johnson v. Rauland-Borg Corp.*, 961 F. Supp. 208, 211 (N.D. Ill. 1997), the court found that the employer's defense to the employee's Title VII hostile work environment claim – that it took reasonable responsive action by authorizing an outside attorney to investigate the matter – waived the attorney-client privilege with regard to the attorney's investigation. Because the employer had placed the investigation and the reasonableness of its conduct into issue, the court concluded, it had waived the attorney-client privilege in that regard. *Id*.[5]

At issue in the *Faragher/Ellerth* defense is the process of the investigation itself, including what the employer knew of the employee's complaints and when. *Brownell*, 185 F.R.D. at 22. "Where, as here, the employer defends itself by relying upon the reasonableness of its response to the victim's allegations, the adequacy of the employer's investigation becomes critical to the issue

---

[4] In *Fultz*, a Title VII retaliation case, the plaintiff wanted to explore the defendant's investigation into another employee's claim of discrimination and her subsequent termination. 1995 WL 76874 at * 1. The defendant refused to allow its general counsel to answer such deposition questions. *Id.* Because the defendant was unwilling to agree that it would not use the results of that investigation as a defense to the plaintiff's retaliation claim, the court ordered the deponent to answer questions regarding the prior complaint investigation. *Id.* at * 3. To hold otherwise, the court noted, would enable the defendant to protect information from discovery while reserving the right to use such information to rebut the plaintiff's allegations, and would be "a classic case of using the attorney/client privilege not as a shield, but as a sword." *Id*. at * 2.

[5] Notably, there was no suggestion in *Sandra T.E.* that the defendant was asserting the reasonableness of the law firm's investigation as an affirmative defense to the claim.

of liability. The only way that Plaintiff, or the finder of fact, can determine the reasonableness of Defendant's investigation is through full disclosure of the contents thereof." *Brownell*, 185 F.R.D. at 25. It would be unfair to allow an employer to hide its investigations and remedial efforts in the case up to the point of trial when it intends to use related evidence of its remedial efforts to evade liability. *Rabonco*, 2006 WL 2401270 at *4.

In this case, FTD has both denied that Musa-Muaremi was constructively discharged and affirmatively asserted that it is not liable for the acts of which she complains because of its appropriate response to the alleged sexually harassing behavior. Thus, FTD's investigation and allegedly remedial efforts are central to the litigation. The disputed documents were part of that investigation process. Although FTD has stated that the final versions of three of the four withheld documents have been produced, Musa-Muaremi is entitled to compare those versions with the withheld documents to see how the description of the meetings – purportedly authored by Human Resources Director Amy Majka – got revised by others along the way. (*E.g., compare* Pl.'s Mot. to Compel, Ex. 8 *with* PR 4-5.) Moreover, as FTD acknowledges, PR 8 was never produced in any form because according to FTD, it was "never made a part of FTD's investigation file." (Second Supp. Log ¶ 5.)

FTD's argument that it has not claimed privilege as to investigation documents but only as to "communications between FTD and FTD's counsel regarding drafts of documents relating to FTD's investigation" (Def.'s Resp. at 8), raises a false distinction. Here, the attorneys were collaborating in the creation of the investigation record.

FTD also argues that it "does not intend to affirmatively rely" on any of the four withheld documents. (Def.'s Resp. at 4.) That argument, however, misses the point. Musa-Muaremi is

entitled to all documents reflecting FTD's investigation of her complaint and its remedial response, not only those that FTD thinks support its cause.

## CONCLUSION

For all of the aforementioned reasons, plaintiff Nadia Musa-Muaremi's motion to compel [dkt 65] is granted. Defendant Florists Transworld Delivery, Inc. shall produce the documents labeled PR 4-5, PR 8, PR 9-10, and PR 11 to Musa-Muaremi no later than May 20, 2010.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

May 13, 2010