# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 09 C 1824 | **DATE** | 7/7/2010 |
| **CASE TITLE** | Musa-Muaremi vs. Florists' Transworld Delivery Inc. (FTD) | | |

**DOCKET ENTRY TEXT**

For the reasons set out below, Defendant's Motion for Reconsideration [98] and Plaintiff's Motion to Strike [111] are both denied. However, defendant's alternative motion for a protective order [104] is granted as follows: Production of the documents labeled PR 4-5, PR 8, PR 9-10, and PR 11 to plaintiff's counsel is stayed until the decision of the District Judge on defendant's objection to the May 13, 2010 opinion.

■[ For further details see text below.]

Notices mailed by Judicial staff.
*Copy to judge/magistrate judge.

## STATEMENT

In an earlier order, defendant Florists' Transworld Delivery, Inc. ("FTD") was ordered to produce to plaintiff Nadia Musa-Muaremi four documents that FTD had previously withheld on the grounds of attorney-client privilege and work product protection. (Mem. Op. and Order, May 13, 2010.) [Dkt 95.] As described in the May 13, 2010 Opinion, the documents are memoranda purporting to be written by FTD's staff about meetings with Musa-Muaremi and others in May 2007 during FTD's investigation of Musa-Muaremi's complaints of harassment. (*Id*. at 3-5.) They reflect editing by FTD's counsel – in one case, to the extent of replacing the entire text with new text – and it is that editing which FTD sought to protect.

In the May 13, 2010 Opinion, this court concluded that the documents are not attorney-client privileged or work product protected, and that, in any event, FTD waived any protection for the documents by asserting the *Faragher/Ellerth* affirmative defense based on FTD's investigation of Musa-Muaremi's complaints. That investigation included the final versions of the disputed documents, which were put in Musa-Muaremi's personnel file and have been produced to her in discovery.

| STATEMENT |
|---|

FTD now moves for reconsideration of that opinion, presenting new evidence to support its argument that the documents were prepared in anticipation of litigation and therefore are work product protected. Specifically, FTD submits a letter written to FTD by Musa-Muaremi's attorney of record in this case and faxed to FTD's in-house counsel Jon Burney and Human Relations Director Amy Majka on May 25, 2007. (Def.'s Mot. Reconsideration, Ex. 1.) In the letter, Musa-Muaremi's attorney informs FTD that he is now representing Musa-Muaremi in connection with "any related claims arising out of her employment . . . ." (*Id*. at 1.) The attorney states that the letter is a formal notice for preservation of documents relevant to "claims set forth in Complainant's Complaint . . . ." (*Id*. at 1-2.) FTD argues that the letter is a clear signal to FTD as early as May 25, 2007 that it should anticipate litigation and, thus, the disputed documents, which were created after that date, satisfy the requirement of Fed. R. Civ. P. 26(b)(3) that protected work product be prepared "in anticipation of litigation or for trial by or for another party or its representative." (Def.'s Mot. Reconsideration at 3-4.)

FTD also argues that the letter proves that Musa-Muaremi's counsel made two misrepresentations to the court in the briefing and argument that led to the May 13, 2010 Opinion. First, FTD states, the letter disproves Musa-Muaremi's argument that FTD could not have anticipated litigation prior to the filing of Musa-Muaremi's Charge of Discrimination in October 2007. (*Id*. at 2.) Second, the fact that the letter was faxed by Musa-Muaremi's current attorney to "Jon Burney, Esq." cannot be reconciled with that attorney's statement to the court during the argument on Musa-Muaremi's motion to compel that he had never heard or seen the name "Jon Burney" prior to FTD's brief filed on February 17, 2010. (*Id*. at 3.)

Musa-Muaremi objects to FTD's use of her attorney's May 25, 2007 letter, and has moved to strike it. (Pl.'s Mot. Strike.) She argues that the letter was not produced by FTD in discovery and therefore, under Rule 37(c)(1), FTD should not be able to use it. (*Id*. at ¶¶ 13, 18, 20.) FTD objects to that motion. (Def.'s Resp. Pl.'s Mot. Strike.) [Dkt 120.]

Plaintiff's motion to strike is denied. Even if the letter was covered by Musa-Muaremi's document requests, FTD's failure to produce it in discovery was harmless, and, therefore, the sanction set out in by Rule

| STATEMENT |
|---|

37(c)(1) does not apply. Musa-Muaremi is not unfairly prejudiced by the use of a letter that her attorney wrote to FTD on her behalf. The fact that at the time he wrote the letter the attorney was with a different law firm from his current firm is irrelevant.

Musa-Muaremi acknowledges that her attorney "misspoke" in saying he had never heard of Jon Burney. (Pl.'s Resp. at 3.) [Dkt 110.] Her attorney says that he did not recall the name at the time of the hearing on the earlier motion. (*Id*. at 3.) He had left the firm at which that letter was written, and Musa-Muaremi did not transfer her case to his new firm until some time later. (*Id*. at 3-4.) The court will extend the benefit of the doubt and conclude that counsel's statement was, indeed, an error but it was not an intentional misrepresentation.

The question, then, is: Considering the May 25, 2007 letter as additional evidence, does that change the conclusion that the disputed documents are not work product protected?

Rule 26(b)(3)(A) protects documents and other tangible things prepared in anticipation of litigation or for trial. That has both a temporal and causation element. "Thus, two factors must be present for the work-product protection to apply: there must be a threat of litigation and there must be a motivational component." Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* vol. 2, 825 (5th ed., ABA 2007). The letter from Musa-Muaremi's attorney changes the facts in the record regarding the temporal element. As early as May 25, 2007, FTD had reason to anticipate that Musa-Muaremi would commence litigation against FTD.

But there is also the causation element to consider.

> "[W]ork product" is defined as those materials produced *because* of the *anticipation* of litigation. Thus, there is a "causation" element insofar as production of the material must be caused by the anticipation of litigation. If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine. Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes.

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 87 (N.D. Ill. 1992) (citations omitted, emphasis in original). The disputed documents reflect edits to memoranda that were purportedly prepared to summarize

## STATEMENT

the results of FTD's investigation of Musa-Muaremi's complaints, and the final versions of those documents were put in her personnel file. The final versions of the documents have been produced by FTD in discovery and will be part of FTD's affirmative defense that it took reasonable care to prevent and correct any allegedly harassing behavior. FTD, which has the burden of proving its work product assertion (*Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996)), has not demonstrated that its creation of the documents was *caused by* the anticipation of litigation rather than as part of its internal investigation of a claim of harassment.

Additionally, there is a real tension between FTD's position that the memoranda in Musa-Muaremi's file summarize a proper and reasonable investigation designed to prevent or correct harassing behavior and its current argument that the changes in those memoranda were made for the purpose of litigation.

That leads to the final point. FTD has not addressed in any way the alternative reason why the disputed documents were ordered to be produced: FTD's assertion of the *Faragher/Ellerth* affirmative defense waives any attorney-client privilege or work product protection that might exist for disputed documents. Because the disputed documents reflect editing of documents that, in their final version, have been produced by FTD as part of its defense, any privilege or protection for those documents is waived. If anything, the argument that fairness requires that the disputed documents be produced is strengthened by the fact that the final versions of the documents in Musa-Muaremi's personal file describing FTD's internal investigation of her harassment complaint reflect editing done after FTD was aware that she had retained an attorney regarding the matter.

Accordingly, FTD's motion for reconsideration of the order requiring production of the disputed documents is denied.

FTD alternatively requests that, if its motion for reconsideration is denied, the documents be held "Confidential" pursuant to the Agreed Protective Order, on the ground that the documents contain "confidential employee information." (Def.'s Mot. Reconsideration at 5-6.) The protective order previously entered, however, is limited to documents containing or relating to FTD's employees' confidential personal information regarding employees' salary and/or gross compensation and bonuses. (Agreed Protective Order ¶ 2.) [Dkt 62.] The

| STATEMENT |
|---|

disputed documents do not contain or reflect any information about employees' salary, compensation or bonuses.

FTD also argues that the documents should be subject to a protective order because they contain privileged and protected attorney client confidences and work product. That argument ignores the finding of the May 13, 2010 Opinion that there are no client confidences revealed in the documents. Those documents merely reflect editing suggestions and word-smithing by FTD's counsel on memoranda purportedly drafted by FTD's internal staff. Rule 26(b)(3)(B) requires the court to protect against disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." The *in camera* review did not disclose anything in the disputed documents that fits that description.

FTD suggests a concern that Musa-Muaremi or her counsel will make the documents a matter of "public record," implying that the documents might be made public (perhaps on the internet) for some improper purpose. (Def.'s Suppl. Mot. Protective Order ¶ 12.) [Dkt.104.] The Standards for Professional Conduct Within the Seventh Federal Judicial Circuit direct that discovery may not be used for an improper purpose. *See Standards for Professional Conduct Within the Seventh Federal Judicial Circuit*, Lawyers' Duties to Other Counsel ¶ 10, available at http://www.ca7.uscourts.gov/Rules/rules.htm#standards (stating "We will not use any form of discovery or discovery scheduling as a means of harassment").

Although this court has rejected FTD's argument that the disputed documents are entitled to protection, FTD has brought an objection to the May 13, 2010 Opinion to the District Judge. [Dkt 100.] The production of the documents is hereby stayed until the disposition of that objection.